UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ADAM G., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-cv-983-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Adam G. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the Act). *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 16).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 13, 14. Plaintiff also filed a reply. *See* ECF No. 15. For the reasons set forth below, Plaintiff's motion (ECF No. 13) is **DENIED,** and the Commissioner's motion (ECF No. 14) is **GRANTED.**

## BACKGROUND

Plaintiff protectively filed his DIB application on February 14, 2017, alleging disability beginning December 23, 2016 (the disability onset date), due to a variety of musculoskeletal impairments and asthma. Transcript ("Tr.") 229-35, 271. Plaintiff's application was denied initially on August 8, 2107, after which he requested an administrative hearing. Tr. 159, 174. On February 15, 2019, Administrative Law Judge William Weir (the "ALJ") presided over a video hearing from Buffalo, New York.  Tr. 17, 116. Plaintiff appeared and testified from Olean, New

York, and was represented by Zachary Zabawa, an attorney. *Id*. Mary Beth Kopar, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on May 20, 2019, finding that Plaintiff was not disabled. Tr. 17-30. On June 5, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-7. The ALJ's May 20, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his May 20, 2019 decision:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2.  The claimant has not engaged in substantial gainful activity since December 23, 2016, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.  The claimant has thoracic and cervical degenerative disc disease, and asthma, each of which constitutes a severe impairment (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a)[1] except he requires a sit or stand option every 15 minutes.  Further, he can never face exposure to pulmonary irritants.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on April 9, 1977 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

---

[1] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 23, 2016, through the date of this decision (20 CFR 404.1520(g)).

Tr. 17-30.

Accordingly, the ALJ determined that, for a period of disability and disability insurance benefits filed on February 13, 2017, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 30.

## ANALYSIS

Plaintiff asserts a single point of error. Plaintiff argues that the ALJ did not properly evaluate the opinion of nurse practitioner Christine Wild ("Ms. Wild"), Plaintiff's primary care provider at Olean Medical Group. *See* ECF No. 13-1 at 18-28. Plaintiff complains that the ALJ assigned little weight to Ms. Wild's opinion and failed to adequately explain his reasoning or consider the appropriate factors. *See id*. Accordingly, argues Plaintiff, the ALJ's RFC finding was not supported by substantial evidence. *Id*.

The Commissioner argues in response that the ALJ properly evaluated the medical opinions in the record and appropriately attributed greater weight to the opinions of consultative examiner Nikita Dave, M.D. ("Dr. Dave"), and state agency physician R. Dickerson, M.D. ("Dr. Dickerson"), than to the opinion of Ms. Wild, a non-acceptable medical source. *See* ECF No. 14-1 at 7-12. The Commissioner also argues that the ALJ explained his reasons for discounting Ms. Wild's opinion, but he was not required to discuss each of the regulatory factors in evaluating Ms. Wild's opinion, as Plaintiff argues.  Accordingly, argues the Commissioner, the ALJ reasonably concluded that Plaintiff was capable of performing a limited range of sedentary work.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such

5

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review, the Court finds that the ALJ properly evaluated the entire record, including the opinion evidence and Plaintiff's treatment notes, and the ALJ's conclusion that Plaintiff had the RFC for a limited range of sedentary work was supported by substantial evidence. Accordingly, the Court finds no error.

As noted above, Plaintiff alleged disability beginning December 23, 2016, due to PTSD, bipolar disorder, thoracic back injury, and bilateral feet injuries from his time serving in the Army. Tr. 120-21, 131. He served in the Army from 1999 to 2007, when he was medically discharged for his back and asthma. Tr. 121-22. He was subsequently found 70 percent disabled by the VA. Tr. 123.

Plaintiff established care at Olean Medical Group on December 30, 2014, and the record indicates regular follow-up visits throughout the relevant period, primarily with Ms. Wild. Tr. 365-77, 1546. He received treatment, primarily for his back pain. Tr. 362. However, other problems included plantar fasciitis, PTSD, anxiety, depression, asthma, and a hiatal hernia. *Id*. As of February 3, 2016, Plaintiff's medications included Naproxen, Voltaren gel, lidocaine patches, cyclobenzaprine, hydrocodone, acetaminophen, and methocarbamol. Tr. 362. Ms. Wild noted limited range of motion and thoracic tenderness on examination. Tr. 363. She started gabapentin on November 2, 2016. Tr. 360-61.

On December 17, 2016, Plaintiff presented to Olean General Hospital Emergency Department ("ED") complaining of back pain. Tr. 1249-50. He was prescribed Toradol and Decadron and instructed to continue taking hydrocodone and Flexeril as needed. Tr. 1250. Plaintiff

was restricted from lifting over 10 pounds, pushing, or pulling and advised to follow up with Ms. Wild. Tr. 1250.

Thereafter, on December 22, 2016, Plaintiff followed up with Ms. Wild at Olean Medical Group, where he reported that his ED visit was due to a back injury he suffered while shoveling snow. Tr. 357. He had stopped taking the Toradol and Decadron prescribed at the ED due to "GI distress," but he remained on hydrocodone, cyclobenzaprine, and gabapentin. Tr. 357. He reported that his pain was "slightly improved." His physical examination noted lumbar scoliosis, limited lumbar range of motion, tenderness and swelling at the L5-S1 right intervertebral space, and no muscle tenderness. Tr. 357. Ms. Wild recommended application of ice or heat for comfort and increasing gabapentin to improve pain control. Tr. 358.

Concurrently, Plaintiff followed up at the VA Hospital for a pain management consultation on December 28, 2016 due to his continued thoracic pain. Tr. 1474. Repeat injections had only been partially effective, and he continued to report bilateral thoracic pain. *Id*. Plaintiff reported the gabapentin increase had helped until he went out hunting and "felt a pop and severe pain" after jumping over a creek. *Id*. On examination, there were discrete areas of tenderness with moderate tenderness along the parathoracic area. Tr. 1477. Treatment notes indicated that Plaintiff's low back pain had improved since his initial consult, and he was scheduled to start physical therapy, as well as lumbar spine imaging. *Id*. Benjamin Matson, M.D. ("Dr. Matson") diagnosed myofascial pain syndrome and administered trigger point injections. *Id*.

Plaintiff had a physical therapy evaluation on January 4, 2017, which assessed lumbar radiculopathy and chronic degenerative joint disease of the thoracic spine. Tr. 724. Plaintiff reported that his back issues had been "resolving" until he hurt his back shoveling snow. *Id*. Upon examination, Plaintiff had reduced lumbar range of motion, and there was a positive tightness and

7

pulling on straight leg raise. Tr. 725. There was also lumbar and thoracic paraspinal tenderness and impaired posture due to weakness and muscle imbalance including thoracic kyphosis and slumped sitting posture. *Id*.

On January 5, 2017, Plaintiff followed up at the VA for psychotherapy and medication management with Francine Pokracki, M.D. ("Dr. Pokracki"). Tr. 1466. On January 12, 2017, Plaintiff treated with VA primary care provider ("PCP") Kathleen Batt, M.D. ("Dr. Batt").  Tr. 1460. He reported difficulty working due to his inability to lift and remained on cyclobenzaprine, gabapentin, and hydrocodone. Tr. 1460.

On March 1, 2017, Plaintiff followed up at the VA for pain management. Tr. 1455. On examination, there was slight scoliosis at the thoracolumbar junction, bilateral paramedian tenderness at the scapula, and areas of tenderness without discrete trigger points in both longus of thoracic and quadratus lumborum. Tr. 1457. Acupuncture, trigger point injections, and a steroid injection were recommended. Tr. 1458.

On April 20, 2017, Plaintiff followed up with Dr. Pokracki for psychotherapy and medication management. Tr. 1139. He had recently started duloxetine for his back pain and mood and had discontinued opiates. Tr. 1139. Plaintiff reported PTSD symptoms, including hyperarousal, avoidance/numbing, reexperience, and nightmares (Tr. 1140), and Dr. Pokracki noted that Plaintiff was stressed by pain and his lack of money (Tr. 1142).

On May 18, 2017, Plaintiff underwent left foot bunionectomy surgery with metatarsal osteotomy and screw fixation performed by Michael Rynn, D.P.M. ("Dr. Rynn"). Tr. 1185. At a follow-up visit on May 22, 2017, Plaintiff remained non-weight bearing, and x-rays revealed normal post-operative progress. Tr. 1096, 1097. Dr. Rynn noted that Plaintiff would require a CAM (controlled ankle movement) walker boot, crutches and limited weight bearing for eight

8

weeks. Tr. 1095. He opined that Plaintiff was limited in weight- bearing, lifting, climbing, pushing, and standing. Tr. 1095. Plaintiff remained in a CAM walker at follow-up visits on May 31 and June 9, 2017. Tr. 1089-91, 1091-93. On June 16, 2017, he was cleared for normal shoes; however, Dr. Rynn recommended continued range of motion exercises and refraining from athletic activity. Tr. 1088.

On July 19, 2017, Plaintiff attended a physical consultative examination with Dr. Dave. Tr. 534. He reported thoracolumbar pain dating back to 2003 when he was deployed in Iraq. Tr. 534. He also reported pain and spasms that worsened with lifting, coughing, and stress; however, his symptoms improved with lying down and performing thoracic extensions. *Id*. Plaintiff also reported bilateral foot pain, dating back to a fracture in 1999, worse on the left than the right. *Id*. He noted he had pain despite his May 2017 left foot bunionectomy. Tr. 534-35. Pain was aggravated with standing or walking over 15 minutes, and he reported that sitting and elevating his feet helped. Tr. 535. On examination, squat was half, and the arches of his feet flattened with weightbearing. Tr. 536. Range of motion was reduced in lumbar lateral flexion. Tr. 537. There was midline tenderness at T6-10, and there was slight tenderness and right thoracic paraspinal spasm. Tr. 537. Dr. Dave opined that Plaintiff had moderate limitations in prolonged standing, walking, lifting, carrying, pushing, and pulling heavy objects, and he "would benefit from seated postures." Tr. 538.

On September 21, 2017, Plaintiff began counseling with Gregory Clark, LCSW-R. ("Mr. Clark"), at the VA. Tr. 1061-62. He reported increased depression and "serious back pain." Tr. 1061. He also reported losing his job and being evicted from his home. Tr. 1061. He was concerned about how starting work would affect his disability claim; however, he felt that if he did work, there was not "much he could do with his back problems." Tr. 1061. On examination, Plaintiff's

mood was depressed, and his affect was appropriate. Tr. 1061. The same day, via telephone, it was noted that Plaintiff needed a consultation for his back and a refill on lidocaine patches. Tr. 1060.

Plaintiff was treated at the ED on October 2, 2017 for continued back pain and abdominal pain. Tr. 1046-57. On examination, there was midline discomfort with palpation of the lumbar spine at L2-3. Tr. 1049. He received Toradol and was discharged. Tr. 1051.

Plaintiff received a pain management evaluation for his thoracic pain on October 13, 2017. Tr. 1030. He reported chronic pain that would radiate. Tr. 1030. He continued Tylenol, Cymbalta, naproxen, gabapentin, and lidocaine patches. Tr. 1030. On examination, there was thoracic tenderness from T10-12, lumbar tenderness at L4-5 and L5-S1, and lumbar range of motion was reduced. Tr. 1032-33. A June 2016 MRI had revealed multilevel discogenic degenerative changes, and facet and costovertebral arthrosis without compromising neural structures. Tr. 1033. There was a mild disc protrusion at T10-11 and multiple thoracic hemangiomas. Tr. 1033. Plaintiff received an epidural steroid injection on October 30, 2017. Tr. 1017.

A primary care follow-up with Dr. Batt at the VA on October 18, 2017 noted that Plaintiff was "on maximum dosage of gabapentin [and Cymbalta" and was also taking cyclobenzaprine. Tr. 1024. A toxicology screen was clear of cannabis, and Dr. Batt prescribed hydrocodone. Tr. 1025.

Plaintiff followed up with Dr. Rynn for symptoms in his right foot on February 14, 2018. Tr. 982. On examination, there was slight limitation in range of motion in dorsiflexion. Tr. 983. On February 28, 2018. Dr. Rynn noted that x-rays revealed hallux valgus and moderate bunion formation. Tr. 979-80. Surgery was recommended, to which Plaintiff agreed. Tr. 980. On April 19, 2018, Plaintiff underwent a right bunionectomy with metatarsal osteotomy with screw fixation. Tr. 931. X-rays on April 23, 2018 revealed good alignment and screw fixation with a corrected

hallux valgus deformity. Tr. 926. At a post-operative follow-up, there was no increased pain, but Plaintiff reported a "clicking sensation" in his toe while walking with his CAM walker. Tr. 921. At his next follow-up appointment on May 14, 2018, Plaintiff remained immobilized in his CAM walker (Tr. 919), and examination revealed good range of motion with normal healing (Tr. 920-21).

Plaintiff followed up with Ms. Wild on March 19, 2018 for abdominal pain. Tr. 698-99. Plaintiff also complained of constant bilateral mid-back pain that was worse on the right side. Tr. 699. There was also numbness and tingling, and he reported depression. Tr. 699. On examination, there was right thoracic paraspinal tenderness, and thoracic and cervical tenderness. Tr. 700. Ms. Wild discontinued cyclobenzaprine and prescribed baclofen. Tr. 700.

At a follow-up appointment with Ms. Wild on May 7, 2018, Plaintiff reported increased back pain after moving a bed and then asking a friend to try to "pop his back," which worsened the pain even further. Tr. 695. Apparently, Plaintiff had tried to pop his back in the past. *Id*. Plaintiff reported that Naproxen, baclofen, Cymbalta, gabapentin, lidocaine, and hydrocodone all provided little relief. *Id*. On examination, Ms. Wild noted thoracic swelling and muscles spasms. Tr. 696. Range of motion exam was deferred. Tr. 696. Ms. Wild advised Plaintiff to avoid any further attempts at self-spinal manipulation and consider chiropractic adjustments. *Id*. She also referred Plaintiff to pain management and neurosurgery for further evaluation. *Id*.  Although Ms. Wild stated that Plaintiff could increase hydrocodone for acute pain, she also encouraged him to reduce his dependence on opioids. *Id*.

Thereafter, on May 17, 2018, Plaintiff had a neurological consultation at University of Buffalo Neurosurgery ("UBNS"), where he was seen by John Fahrbach M.D. ("Dr. Fahrbach"). Tr. 727-28. Plaintiff reported radiating thoracic back pain with occasional numbness in the thumbs.

Tr. 727. On examination, Plaintiff was able to rise from a seated position and had normal gait and station and intact strength in the upper and lower extremities. Tr. 728. Dr. Fahrbach also noted a slight decrease in cervical range of motion due to pain and slight thoracic paraspinal tenderness. *Id*. Dr. Fahrbach reviewed a February 2016 MRI report showing mild bulge and herniation at T11-12 and a December 2017 lumbar spine x-ray with unremarkable findings, but he determined that updated imaging in the form of cervical and thoracic MRI, as well as flexion-extension x-rays of his cervical spine, was warranted. *Id*. Dr. Fahrbach also recommended physical therapy. Tr. 728.

On May 24, 2018, Plaintiff began physical therapy at Olean Medical, reporting mid- and low-back pain. Tr. 721. On examination, there was point tenderness at L5-S1, and thoracic pain with muscle spasms. Tr. 721. Straight leg raise testing was positive bilaterally, and there was point tenderness with radicular pain. Tr. 721. The long-term goal of therapy was to increase flexibility, resolve positive straight leg raise, and resolve point tenderness. Tr. 721.

During a follow-up appointment with Ms. Wild on August 7, 2018, Plaintiff reported he was no longer working as a radiology technician because lifting and pushing made his pain worse. Tr. 691. Ms. Wild noted that Plaintiff had received hydrocodone prescriptions from the VA, as well as from her office. *Id*. Examination revealed an abnormal abdomen with mild tenderness. Tr. 693. In his back, there was thoracic paraspinal tenderness. Tr. 693. Ms. Wild continued baclofen and discontinued gabapentin for Lyrica. Tr. 693-94. She noted that Plaintiff failed to report for a toxicology screen and pill count as requested, and therefore, the office would no longer provide opiates. Tr. 694.

At a physical therapy visit on August 13, 2018, Plaintiff complained of increased pain after hiking 10 miles. Tr. 718. He reported difficulty lying down, sleeping, traveling, sitting over 30 minutes, standing over an hour, walking, bending, and lifting were noted. *Id*. On examination

Plaintiff had limited range of motion due to pain; there was core weakness; and tenderness in the mid- to low-thoracic spine was noted. Tr.720. There was increased muscle guarding into the right paraspinals, and gait was antalgic. *Id*.

On September 2, 2018, a VA social worker reported that Plaintiff had presented to the ED after overdosing on Lyrica and alcohol in attempt to calm a panic attack. Tr. 897-98. Plaintiff admitted he was drinking, consumed edible marijuana, and took more than the prescribed dosage of Lyrica. Tr. 897. Plaintiff stated he was not intending to harm himself, but the ED provider believed inpatient treatment was warranted. Tr. 893, 898. Although direct records from the ED visit and subsequent admission were not found in the record, it does appear that Plaintiff was admitted, as on September 28, 2018, Plaintiff reported to Mr. Clark that he was "in the psych ward for a couple of days" after drinking and taking drugs. Tr. 884.

On September 11, 2018, Plaintiff had a chiropractic consultation at the VA with Michael Barbato, D.C. ("Dr. Barbato"). Tr. 887-93. He reported neck pain, intermittent paresthesia in the hands, and some hand weakness. Tr. 888. Injections and physical therapy had been ineffective. *Id*. He reported performing home exercises, and noted medications provided some relief. *Id*. On examination, Plaintiff had mildly limited cervical range of motion, and there was pain with some motions; lumbar range of motion was also mildly limited with pain. *Id*. Dr. Barbato also noted positive Tinel's sign and cubital tunnel. Tr. 892. Shoulder depression testing revealed right-sided neck pain. Tr. 890. Dr. Barbato recommended conservative care and performed manipulation of Plaintiff's mid-thoracic spine. Tr. 891-92. Plaintiff tolerated the treatment well and noted "immediate improvement" in pain. Tr. 892.

Plaintiff followed up with Dr. Barbato on November 6, 2018, for continued neck and low back pain. Tr. 878. He reported no improvement with home exercise. Tr. 878. Chiropractic

manipulation had provided transient relief with a return to baseline after a day or two. Tr. 878. Examination was largely unchanged. Tr. 878-79. Plaintiff reported mild improvement from use of a TENS unit but admitted he had not been using it regularly. Tr. 879. At a follow-up visit on November 20, 2018, Plaintiff reported four days of pain relief after his last treatment until he aggravated his back by stepping in a ditch. Tr. 871. He also reported that manual therapy and home exercises had provided some relief for his neck pain. *Id*. Otherwise, his symptoms were largely unchanged, and his range of motion remained mildly limited on examination. Tr. 871. This was essentially unchanged on December 6, 2018; however, significant tenderness and hypertonicity of the mid thoracic musculature was also noted. Tr. 867-68.

In addition to manipulation, Plaintiff received acupuncture treatment from Dr. Barbato on December 14, 2018. Tr. 863. He noted improvement for three to four days with his chiropractic treatment. Tr. 864. Examination still revealed significant tenderness and hypertonicity with palpation at the mid thoracic paraspinals. Tr. 864. At a primary care follow-up visit on January 14, 2019, Plaintiff reported increased thoracic pain, despite receiving acupuncture, chiropractic treatment, and using marijuana for pain. Tr. 857. Plaintiff again received acupuncture treatment from Dr. Barbato on January 25, 2019. Tr. 852. Examination still revealed significant tenderness and hypertonicity. Tr. 851. Plaintiff again reported only one to two days of improvement with treatment. Tr. 850-51.

On February 14, 2019, Ms. Wild completed a "check-box" opinion form. Tr. 1546-50. She stated she had treated Plaintiff every six months since 2014. Tr. 1546. She noted that Plaintiff had constant thoracic pain, and his prognosis was poor. Tr. 1546. She also noted his depression, anxiety, and PTSD, stating that his symptoms would frequently interfere with his concentration to perform even simple tasks, and his anxiety was manageable with up to moderate stress. Tr. 1547.

He could walk less than one block, sit 30 minutes, and stand 15 minutes at a time. Tr. 1547. In an eight-hour workday, he could sit or stand/walk less than two hours total each. Tr. 1548. Every 30 minutes he would need a five-minute break to walk. Tr. 1548. He would also need to change positions and take additional breaks every 30 minutes for 10 minutes. Tr. 1548. He could occasionally lift less than 10 pounds, rarely lift 10, and never lift more. Tr. 1548. He would also have good and bad days and would likely miss more than four workdays per month. Tr. 1549.

As noted above, Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence. A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the

RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Plaintiff's sole point of error challenges the ALJ's assessment of the medical opinion evidence, in particular the opinions of Ms. Wild (Tr. 1546-50), Dr. Dickerson (Tr. 154-56), and Dr. Dave (Tr. 534-38). *See* ECF No. 13-1 at 18–27. Plaintiff first argues that the ALJ did not properly weigh Ms. Wild's opinion under the regulations and case law and did not provide good reasons for rejecting the opinion. *See id*. As an initial matter, the Court notes that, effective for claims filed on or after March 27, 2017, the Social Security agency comprehensively revised its regulations governing medical opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed.

Reg. 15, 132-01 (March 27, 2017). For the purposes of this case, however, the prior version of the regulation applies. *See Smith v. Colvin*, No. 16-CV-6150L, 2018 WL 1210891, at *2 (W.D.N.Y. Mar. 8, 2018).

In affording less weight to Ms. Wild's opinions, the ALJ appropriately considered the regulatory factors for evaluating medical opinions, including the fact that Ms. Wild is an "other source," rather than an "acceptable medical source," and thus, her opinion was not entitled to any particular deference. *Anderson v. Colvin*, No. 5:12-CV-1008 GLS/ESH, 2013 WL 5939665, at *6 (N.D.N.Y. Nov. 5, 2013); *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) ("[W]hile the ALJ is certainly free to consider the opinion of [non-acceptable medical sources] in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician."); *see also* 20 C.F.R. § 416.913.

The ALJ nevertheless considered Ms. Wild's opinions under the regulatory factors found in 20 C.F.R. §§ 404.1527(c); 416.927(c), including (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c) (2), 416.927(c)(2); *see Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); *Marquez v. Colvin*, No. 12 CIV. 6819 PKC, 2013 WL 5568718, at *9 (S.D.N.Y. Oct. 9, 2013). Although Plaintiff suggests otherwise (*see* ECF No. 13-1 at 18-19), now-rescinded SSR 06-3p5 did not require the ALJ to discuss each of the factors set forth in 20 C.F.R. § 404.1527(d) in evaluating the opinion of "other sources." *See* SSR 06-3p ("Although the factors in 20 C.F.R. § 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors *can be* applied to opinion evidence from 'other sources.'") (emphasis added).

Plaintiff argues that the ALJ erred in discounting Ms. Wild's opinion because the ALJ should have considered the frequency, length, nature, and extent of treatment when deciding what weight to assign the opinion. *See* ECF No. 13-1 at 20-21. However, the ALJ was not required to consider every factor. *See, e.g., Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013). Furthermore, the ALJ acknowledged Ms. Wild as a treating source who was familiar with Plaintiff and specifically cited treatment notes prior to Ms. Wild's February 2019 opinion. Tr. 28.

The ALJ then went on to explain that Ms. Wild's opinion was issued on a standardized "check-box" form with no narrative explanation for the assessed limitations. Tr. 28 (citing Tr. 1546-50). As this Court has noted previously, the Second Circuit and many district courts have found that such opinions are of limited evidentiary value. *See Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004) ("only marginally useful"); *Slattery v. Colvin*, 111 F. Supp. 3d 360, 372-73 (W.D.N.Y. 2015) ("of limited evidentiary value") (citing *Gray v. Astrue*, No. 09-CV-00584 (MAT), 2011 WL 2516496, at *5 (W.D.N.Y. June 23, 2011)); *Koerber v. Comm'r of Soc. Sec.*, No. 6:19-CV-1070-DB, 2020 WL 1915294, at *1 (W.D.N.Y. Apr. 20, 2020) (citing *Augustine v. Comm'r of Soc. Sec.*, No. 6:15-CV-06145-EAW, 2016 WL 5462836, at *1 (W.D.N.Y. Sept. 28, 2016); *see also Patterson v. Comm'r of Soc. Sec.*, No. 17-CV-1195S, 2019 WL 257932, at *6 (W.D.N.Y. Jan. 18, 2019) (ALJ appropriately discounted medical source statement of physician's assistant who "expressed his opinion of Plaintiff's functional limitations merely by checking boxes on a form" and "did not explain these limitations, nor did he indicate which of Plaintiff's conditions would account for such significant restrictions on Plaintiff's physical functioning.").

The ALJ also found that the extreme limitations in Ms. Wild's check-box opinion form were inconsistent with, and unsupported by, the overall record, such as Plaintiff's conservative treatment history, physical examination findings showing normal gait and strength, and other

opinions of record. Tr. 28, 407-15, 472-73, 482-83, 501-02, 693, 695-96, 700, 728, 858, 1025, 1032-33, 1049. As the ALJ noted, after Plaintiff's primary care visit with Ms. Wild in December 2016, Plaintiff's examinations at subsequent primary care visits often revealed a normal gait, 2+ reflexes, normal stability, normal range of motion, and no sensory loss despite tenderness and spasm and despite swelling noted on one occasion.  Tr. 24, 472-73, 482-83, 501-02, 693, 695-96, 700, 728, 858, 1025, 1032-33, 1049. The ALJ also noted that while Plaintiff was noted to be uncomfortable at one visit, he was otherwise noted to be in no distress at his other visits.  Tr. 693, 696-96, 700. Likewise, at VA primary care visits, Plaintiff was noted to be in no distress with no musculoskeletal or neurological deficits, despite his reports of pain and symptoms. Tr. 482-83, 858, 1025.

These are sufficient reasons to discount even a treating doctor's opinion. *See, e.g., Suttles v. Berryhill*, 756 F. App'x 77, 77-78 (2d Cir. 2019) (ALJ appropriately accorded little weight to treating nurse practitioner's opinions because "she was not an acceptable medical source and her opinions were inconsistent with [the claimant]'s medical records."); *Monroe*, 676 F. App'x at 8 (ALJ did not improperly substitute her lay opinion for that of the treating physician but rejected the opinion as it was contrary to the doctor's treatment notes). For all these reasons, and because the ALJ provided ample reasons for assigning little weight to Ms. Wild's opinion, the Court finds no error.

Instead, the ALJ assigned greater weight to the opinions of consultative examiner Dr. Dave and state agency medical consultant Dr. Dickerson. Tr. 26-27. The ALJ assigned partial weight to Dr. Dave's opinion that Plaintiff had moderate limitations for prolonged standing, walking, lifting, carrying, pushing, pulling, and would benefit from seated postures. Tr. 26, 538. Although the ALJ found Dr. Dave's opinion that Plaintiff needed to avoid humidity and temperature extremes was

inconsistent with the overall record, including Plaintiff's lack of continued respiratory complaints and often-noted clean lungs, the ALJ found that Dr. Dave's opinion with respect to Plaintiff's exertional limitations was consistent with the overall record, including Plaintiff's conservative treatment history, and often-noted lack of distress, normal strength, and normal gait, and accordingly limited Plaintiff to a limited range of sedentary work. Tr. 26-27.

While Plaintiff had a reduced squat with reduced range of motion in the lumbar spine and spinal tenderness during the consultative examination, he was otherwise observed to be in no distress, had a normal gait, exhibited full range of motion of the cervical spine and the extremities, had stable and non-tender joints, had negative straight leg raise tests, had physiologic reflexes, had an intact sensation, and full (5/5) strength. Tr. 536-37. Thus, the ALJ reasonably concluded that Dr. Dave's opinion with respect to Plaintiff's functional abilities was entitled to more weight, as it was based on examination findings showing only some limitations. Tr. 25. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.").

Contrary to Plaintiff's assertion (*see* ECF No. 13-1 at 25-26), the opinion of a consulting physician such as Dr. Dave may constitute substantial evidence in support of the ALJ's determination and can be given more weight than the opinion of a treating source. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (report of a consultative physician may constitute substantial evidence to contradict the opinion of a treating physician); *see also Lewis v. Colvin*, 548 F. App'x 675, 677-78 (2d Cir. 2013) (affirming ALJ's decision where ALJ gave more weight to consulting physician opinion than treating source opinion); *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (ALJ reasonably gave more weight to the opinion of consultative examiner

than treating source opinion); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (affirming ALJ's decision, which gave great weight to the opinions of consulting physicians).

The ALJ also considered and gave partial weight to state agency medical consultant Dr. Dickerson's opinion that Plaintiff could perform a range of light work. Tr. 27, 154-56. As the ALJ explained, although he found Dr. Dickerson's opinion generally consistent with the overall record, he concluded that Plaintiff's reports of pain, tenderness, and noted decreased range of motion at times suggested that Plaintiff should be limited to sedentary, not light, work. Tr. 27. Again, despite Plaintiff's arguments to the contrary (*see* ECF No. 13-1 at 26-27), the regulations specifically direct the ALJ to consider the opinions of state agency consultants, applying the factors set forth in 20 C.F.R. § 404.1527(c). 20 C.F.R. §§ 404.1513a(b)(1), 404.1527(e). Likewise, the Commissioner's regulations permit the opinions of non-examining sources, such as state agency consultants, to constitute substantial evidence in support of the ALJ's decision, and even to override treating source opinions when they are well supported. *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995); *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016). Here, the opinions of Dr. Dave and Dr. Dickerson support the ALJ's finding that Plaintiff could perform sedentary work with a sit-stand option every 15 minutes. Tr. 23.

As discussed above, the ALJ also relied on Plaintiff's treatment notes in reaching the RFC finding, as he was permitted to do. *See Monroe*, 676 F. App'x at 9 (finding that the ALJ could rely on treatment notes to formulate the RFC assessment). The ALJ noted that Plaintiff had a history of back pain and positive diagnostic imaging (Tr. 381, 519, 751-52, 816, 1270) and, at times, had some limited range of motion in the spine with tenderness and swelling (Tr. 357-58). Tr. 24, However, the ALJ appropriately noted that despite these findings, Plaintiff's physical examinations were otherwise generally normal, with Plaintiff often exhibiting normal gait, normal

reflexes, normal stability, normal ranges of motion throughout, and no sensory loss (Tr. 482-83, 693, 695-96, 700, 728, 858, 1025), and full range of motion throughout at multiple visits with providers (Tr. 472-73, 501-02, 1032-33). Tr. 24. The ALJ also considered that Plaintiff had presented to the ED for back pain in October 2017, but he was observed to be in no distress, had normal range of motion, full (5/5) strength, normal motor and sensory function, and was discharged home with only acetaminophen. Tr. 25, 1049. During a March 2017 VA examination, Plaintiff had reduced range of motion and spasm, but also had full (5/5) strength, no atrophy, normal reflexes, intact sensation, negative straight leg raise testing, no radiculopathy, and no gait disturbances. Tr. 407-15.

The ALJ also considered Plaintiff's daily activities. Tr. 26. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's abilities to watch television, read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible).

Plaintiff reported that he was independent with activities of daily living and ambulation and did not need assistance. Tr. 26, 472. He also reported that he goes to the gym, exercises, and rides his bicycle. Tr. 26, 420. Plaintiff also reported that he can perform personal care, cook, clean, shop, do laundry, manage funds, socialize with friends and family, and act as a primary caregiver on a part-time basis. Tr. 26, 530. Plaintiff also admitted that he shared driving duties on a trip to

Colorado during the period at issue.  Tr. 136, 845. As the ALJ concluded, this evidence suggests a greater functional ability than alleged. The ALJ also pointed out that, although Plaintiff suggested he could work if he did not have back complaints, he was also concerned that working might affect his application for Social Security benefits.  Tr. 1397.

In his final argument, Plaintiff alleges that the ALJ relied on a selective reading of the treatment records to minimize and disregard most of the evidence supporting Ms. Wild's opinion. *See* ECF No. 13-1 at 23-27. However, Plaintiff's arguments are simply a request for a reweighing of the evidence in his favor, which is inappropriate under the substantial evidence standard of review. *Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review."). Plaintiff cites some evidence in his favor and ignores the evidence and analysis that supported the ALJ's RFC finding, including the normal examination findings and the consultative examiner's examination results and opinion. However, the fact that the evidence may have been weighed differently, or that there may be a reasonable interpretation of the evidence in Plaintiff's favor, is not probative. *Caron v. Colvin*, 600 F. App'x 43, 44 (2d Cir. 2015).

Furthermore, Plaintiff's argument overlooks the deferential standard long established by courts in reviewing administrative determinations. The Commissioner's findings of fact must be upheld unless "a reasonable factfinder would have to conclude otherwise." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d at 443, 448 (2d Cir. 2012); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard.") (internal quotation marks omitted).

While Plaintiff may disagree with the ALJ's conclusion, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence); *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) ("Under this very deferential standard of review, once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise."). Thus, Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Brault*, 683 F.3d at 448. Plaintiff here has failed to meet this burden.

For all the reasons discussed above, the Court finds that the ALJ properly considered the record as a whole in accordance with the Commissioner's regulations, including Plaintiff's treatment notes, the objective findings, Plaintiff's daily activities, and the medical opinion evidence, to correctly assess an RFC that was supported by substantial evidence. Accordingly, the Court finds no error.

## <u>CONCLUSION</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No.13) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE